## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**TODD M. COLEMAN,**

     **Plaintiff,**

     **v.**

**UNIFIED GOVERNMENTY OF
WYANDOTTE COUNTY, ET AL.,**

     **Defendants.**

**Case No. 18-CV-2135-JAR-TJJ**

## MEMORANDUM AND ORDER

Plaintiff Todd Coleman, proceeding *pro se* and *in forma pauperis*, brought this action against Defendants Unified Government of Wyandotte County and Kansas City, Kansas Fire Department (hereinafter referred to collectively as "Government Defendants" and individually as "Unified Government" and "KCK Fire"); International Association of Firefighters Local 64 and Robert Wing (hereinafter referred to collectively as "Union Defendants" and individually as "IAFF Local 64" and "Wing"), and Blake & Uhlig, P.A. and Scott Brown (hereinafter referred to collectively as "Attorney Defendants" and individually as "Blake & Uhlig" and "Brown"). Plaintiff alleges civil rights and state law tort claims against Defendants. Before the Court are the Government Defendants' Motion to Dismiss (Doc. 17), the Attorney Defendants' Motion to Dismiss (Doc. 18), and the Union Defendants' Motion to Dismiss (Doc. 34), all brought pursuant to Fed. R. Civ. P. 12(b)(6). The motions are fully briefed,[1] and the Court is prepared to rule. As described more fully below, the Court grants Defendants' motions to dismiss.

---

[1] Neither the Government Defendants nor the Attorney Defendants filed a Reply to Plaintiff's Response to their respective motions to dismiss within the twenty-one-day deadline for filing a reply to dispositive motions under D. Kan. Rule 6.1(d).

# I. Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Complaint and construed in the light most favorable to Plaintiff.[2]

Plaintiff Todd M. Coleman is a former firefighter with KCK Fire. On July 28, 2016, Coleman attended a meeting at the fire department headquarters where he answered questions regarding his residency. When asked, he did not deny that he owned out-of-state property, which he had purchased from his mother in 2012. Fire Chief John Paul Jones produced a picture of a piece of property, contending it was the property in question. Coleman informed him that the picture did not portray his property. Fire Chief Jones asked again if it was the correct property, and Coleman again informed him that it was not. At the end of the meeting, Coleman was suspended, without pay, pending termination and the outcome of the investigation.

Immediately following the meeting, Coleman filed a grievance of his suspension pursuant to the procedure in the Memorandum and Agreement between IAFF Local 64 and the Unified Government. IAFF Local 64 is the union that represents firefighters and paramedics employed by KCK Fire in contract negotiations and grievance procedures. Plaintiff provided IAFF Local 64 documentation supporting his residency. Plaintiff claimed he met the requirements in the Unified Government's residency policy, and that he was temporarily using the garage and basement of his out-of-state property to run a non-profit lawn service.

In August 2016, Coleman met with IAFF Local 64 business manager Robert Wing[3] and learned the union was going to process his grievance. Coleman asked Wing if he should bring his own counsel. Wing informed him that others who have done so have regretted the decision

---

[2]*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

[3]Robert Wing's title as business manager is taken from the Union Defendants' Memorandum in Support of its Motion to Dismiss. Doc. 35 ¶ 3.

and explained that interference from an outside lawyer, other than one IAFF Local 64 provided, would cause them to relinquish the case and absolve IAFF Local 64 of any responsibility.

On October 19, 2016, Coleman, IAFF Local 64 representatives, and Unified Government representatives met with a mediator. The Unified Government representatives indicated that they believed Coleman (1) violated the Unified Government's residency policy; (2) hurried to put together contrary evidence; and (3) did not spend fifty-percent of his time within the Wyandotte County limits. Plaintiff states the Unified Government's residency policy does not require employees to spend fifty-percent of their time within Wyandotte County limits. At the end of the meeting, the mediator requested a copy of the Unified Government's investigation file of Coleman.

At a December 12 meeting, Coleman received a large file containing the Unified Government's investigation. He learned the investigation began with an anonymous email. Coleman was allowed forty-five minutes to an hour to write down inconsistencies and disagreements with the investigation. During his review, Coleman found ten inconsistencies. The Unified Government also gave him a compact disc, but Coleman did not have the proper equipment to view its contents at the time. IAFF Local 64 and Wing refused to turn over the investigation file to Coleman again to review.

During a meeting on December 22, Wing asked Fire Chief Jones how the Unified Government's residency policy applied to new hires and to those who had served at the fire department for some years. Fire Chief Jones told Wing that the policy had always been enforced consistently and resulted in termination if violated. However, according to Plaintiff, ranked members have been contacted by on-duty agents concerning residency and received the opportunity to remedy the situation if their residency was an issue. At the December 22 meeting,

Coleman raised his concern that the residency policy violated the Constitution. The meeting concluded with Wing asking the Unified Government for a return-to-work agreement for Coleman, but he received no response. On December 23, Wing notified Coleman that he was going to meet with the Unified Government County Administrator about a "last chance" agreement. Coleman never learned whether this meeting occurred.

Wing informed Coleman on January 1, 2017, that he was going to appeal the issue to Step 4 of the grievance procedure, which is arbitration. He offered to continue to pursue a settlement agreement, but thought "it need[ed] to move onto final resolve."[4] Wing engaged IAFF Local 64's counsel, Scott Brown of Blake and Uhlig, to assist the union leading up to arbitration.

In June 2017, Brown met with Coleman and informed him that he was going to ask Unified Government for copies of the investigation and that it would take him about a week to go through it. On July 10, Wing informed Coleman that the Unified Government was not cooperating with the information request and that the arbitrator could order them to comply. On July 25, Wing informed Coleman that he would file a charge with the Public Employees Relation Board ("PERB") if they had not received the Unified Government's documents by July 28.

During an August 2017 meeting, Brown asserted that the Unified Government believed Coleman did not spend fifty-percent of his time in Wyandotte County and that he would argue against the fifty-percent policy. On September 11, Wing informed Coleman that Brown was

---

[4] Doc. 1 ¶ 39.

drafting an opinion letter as to the merits of the grievance.[5]  Coleman received the opinion on

September 29 and sent a "scathing email" to Wing on October 26.[6]

On October 30, 2017, Coleman filed a charge against IAFF Local 64 with the National

Labor Relations Board ("NLRB") for engaging in unfair labor practices; the NLRB dismissed

the claim for lack of jurisdiction.  Coleman then filed a claim with the Kansas PERB on

December 14, 2017, but it was dismissed because the Kansas PERB does not handle disputes

against labor unions.  On February 14, 2018, Wing informed Coleman that IAFF Local 64

withdrew his grievance with the Unified Government for lack of merit.

## II.    Standard

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."[7]  It must provide sufficient factual allegations to "give the defendant

fair notice" of the grounds for the claim against them.[8]  To survive a motion to dismiss brought

under Fed. R. Civ. P. 12(b)(6), a complaint must include "enough facts to state a claim to relief

that is plausible on its face," rather than just conceivable, and "raises a right to relief above the

speculative level."[9]  Under the plausibility standard, if allegations "are so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'"[10]  The plausibility standard does not

require a showing of probability that a defendant has acted unlawfully, but requires "more than a

---

[5]Plaintiff's Complaint does not identify the purpose of the opinion.  *See* Doc. 1.  The Union Defendants'
Memorandum in Support of its Motion to Dismiss clarifies the opinion was on the merits of Plaintiff's grievance.
Doc. 35 ¶ 11.

[6]Doc. 1 ¶ 47.

[7]Fed. R. Civ. P. 8(a)(2).

[8]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[9]*Id.* at 570, 555.

[10]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

sheer possibility."[11]  As the Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[12]  All of the plaintiff's factual allegations are presumed true and construed in a light most favorable to the plaintiff.[13]

Because Plaintiff is a *pro se* litigant, the Court construes his pleadings liberally and holds them to a less stringent standard than those drafted by lawyers.[14]  However, the Court may "not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[15]  As an initial matter, Plaintiff cites to various exhibits in his Complaint and Responses; however, as no exhibits have been filed, the Court does not consider those references in its decision.

## III.    Discussion

The Court liberally construes Plaintiff's Complaint as alleging claims under 42 U.S.C. § 1983 in addition to Kansas state law tort claims.  Plaintiff alleges Defendants violated both his substantive and procedural due process rights under the Fifth Amendment.  Additionally, Plaintiff alleges Kansas state law claims for fraud and intentional infliction of emotional distress.  Defendants move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

---

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]*Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

[13]*Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[14]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citing *Gagan v. Norton*, 35 F.3d 1473, 1474 (10th Cir. 1994)).

[15]*Id.* at 1173–74 (citing *Hall*, 935 F.2d at 1110).

**A.      Section 1983 Claims**

**1.      Defendants Brown, Blake & Uhlig, IAFF Local 64, and Robert Wing**

Plaintiff fails to state a claim under § 1983 against the Union and Attorney Defendants because on the face of the Complaint, there are insufficient facts to deem these Defendants state actors.  To bring a § 1983 claim, Plaintiff must show there has been a "deprivation of a civil right by a 'person' acting under color of state law."[16]  "Private individuals and entities may be deemed state actors, however, if they have 'acted together with or [have] obtained significant aid from state officials, or [if their] conduct is otherwise chargeable to the state.'"[17]  The Supreme Court has developed four tests to determine whether private actors should be considered state actors for purposes of § 1983 liability: "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test."[18]  However, when a plaintiff attempts to assert state action by alleging a conspiracy between private defendants and "state officials or judges," "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."[19]  Plaintiff's Complaint is devoid of specific facts suggesting the Defendants at issue are state actors.

Here, assuming the facts alleged in the Complaint are true, the Union Defendants cannot be state actors.  Generally, labor unions such as IAFF Local 64 are not state actors absent a showing that the union acted in concert with the state.[20]  Plaintiff's alleged facts do not lead to an

---

[16]*McLaughlin v. Bd. of Trustees of State Coll. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

[17]*Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002) (alteration in original) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (2002)).

[18]*Anderson v. Suiters*, 499 F.3d 1228, 1233 (10th Cir. 2007) (quoting *Johnson*, 293 F.3d at 1202–03).

[19]*Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000).

[20]*See Montgomery v. City of Ardmore*, 365 F.3d 926, 942 (10th Cir. 2004); *see also Munoz v. Hanley*, No. 05-CV-228-B, 2006 WL 8435501, at *1 (D. Wyo. May 11, 2006) (citing *Montgomery*, 365 F.3d at 942).

inference that the Union Defendants engaged in concerted action with the Unified Government.[21] Plaintiff's argument that the Union Defendants are state actors conflates the Union Defendants' conduct with that of the Government Defendants. Citing the "state compulsion test," Plaintiff argues the Unified Government coercively used its statement that Plaintiff did not spend fifty-percent of his time in Wyandotte County to achieve "alternative goal concerning policy."[22] However, he does not allege facts that lead to an inference that the Unified Government coerced the Union Defendants' actions.

Plaintiff also attempts to argue that the facts satisfy the "symbiotic relationship test," "entwinement test," and "joint participation test" by showing mutual interdependence between IAFF Local 64 and the Unified Government.[23] He argues that private employees of IAFF Local 64 are state employees, and that the duties of the employees are interdependent of one another. He further theorizes that because of the collective bargaining agreement and IAFF Local 64 members' statuses as public employees, the Union Defendants are state actors. However, this ignores the fact that the Unified Government and IAFF Local 64 are different entities, with different rights and obligations under the collective bargaining agreement, and further disregards the adversarial nature of the relationship between a union and its members' employer. Without additional facts, the existence of a collective bargaining agreement negotiated with a

---

[21]*See Montgomery*, 365 F.3d at 939, 940–42 (finding that a union was not a state actor where there were no specific factual allegations that a union had conspired with a city where plaintiff alleged unlawful acts by defendants and "stated, without any specific facts evincing an agreement among the various defendants, that they conspired against him"); *cf. Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 880–81 (2d Cir. 1988) (finding that a complaint alleged facts sufficient to create an inference that a union acted under state law where the complaint alleged the police union conspired with a police department, and further alleged the union hired private investigators and placed plaintiff under surveillance with the knowledge and consent of the police department).

[22]Doc. 36 at 2.

[23]*Id.* at 2–3.

governmental entity is insufficient to infer that a union is a state actor.[24]  Beyond conclusory allegations, Plaintiff does not provide any additional facts that would transform IAFF Local 64's actions into state action.  Therefore, Plaintiff's Complaint contains no factual allegations that the Union Defendants acted closely with state officials or engaged in conduct chargeable to the state, and thus fails to establish an inference that the Union Defendants acted under the color of state law.

Plaintiff also argues that the Attorney Defendants are state actors because they provide legal advice and representation to the Union Defendants.  This theory necessarily requires that IAFF Local 64 be a state actor.  As previously discussed, the alleged facts, even when presumed true and construed in a light most favorable to Plaintiff, do not support a finding that the Union Defendants are state actors.  Further, even if the Union Defendants were state actors, an attorney does not act under the color of state law by representing a client.[25]  Moreover, the Attorney Defendants' involvement with collective bargaining agreements and grievance procedures do not create state action, particularly when Plaintiff has alleged no additional facts that would indicate concerted action to deprive Plaintiff of his rights.  Thus, the Attorney Defendants are also not state actors, and the Court dismisses Plaintiffs § 1983 claims against both the Union Defendants and the Attorney Defendants for failure to state a claim.

---

[24]*See Bain v. Calif. Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (rejecting the argument that a collective bargaining agreement negotiated by the State and the unions is infused with state action); *see also Hallman v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 817 (7th Cir. 2009) ("[U]nion actions taken pursuant to the organization's own internal governing rules and regulations are not state actions.") (citing *Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998)).

[25]*See Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) ("The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983.") (quoting *Goetz v. Windsor Cent. Sch. Dist.*, 593 F. Supp. 526, 528 (N.D.N.Y. 1984)); *see also Anderson v. Toomey*, 324 F. App'x 711, 713 (10th Cir. 2009); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1264 (D. Kan. 2008); *Herlocker v. Loffswold*, No. 16-2300-JAR-TJJ, 2016 WL 5851732, at *2 (D. Kan. Oct. 6, 2016).

## 2. Defendants Unified Government and KCK Fire

### a. Substantive Due Process

Plaintiff alleges he was the victim of "bad faith, outrageous government conduct and manifest injustice," as well as "overt acts of fraud" and "illegal and unethical conduct."[26] The Court construes this as Plaintiff asserting a substantive due process claim. The Government Defendants argue that Plaintiff has not pleaded facts that give rise to an inference of a violation of his right to substantive due process. The Court agrees and finds that Plaintiff's Complaint fails to state a substantive due process claim against the Government Defendants.

"A Fourteenth Amendment substantive due process claim arises when a plaintiff alleges the government deprived him of a fundamental right."[27] Substantive due process typically arises in situations involving "marriage, family, procreation, and the right to bodily integrity."[28] In the context of public employment, "[a] public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons."[29] Thus, to establish a substantive due process claim, a plaintiff must plead facts to show that the government's action was arbitrary, capricious, or without a rational basis.[30] Government action is arbitrary where it "shocks the conscience."[31]

Plaintiff's Complaint lacks facts to support the conclusion that the Government Defendants' actions were arbitrary, irrational, or conscience-shocking. To demonstrate that the

---

[26]Doc. 1 at 6; *Id.* ¶¶ 59, 61.

[27]*Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013).

[28]*Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)).

[29]*Darr v. Town of Telluride*, 495 F.3d 1243, 1257 (10th Cir. 2007) (citation omitted).

[30]*Crider v. Bd. of Cty. Comm'rs of Cty. of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998).

[31]*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).

government violated substantive due process rights, "a plaintiff must do more than show than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."[32]  Plaintiff's Complaint seems to allege that the Government Defendants violated his substantive due process rights by claiming that Plaintiff violated the residency policy because he did not spend fifty-percent of his time within Wyandotte County limits.  Plaintiff asserts that because he provided documents to the Government Defendants establishing his Wyandotte County residency, the decision to suspend him without pay and his eventual termination were contrary to the facts.  However, Plaintiff does not allege facts suggesting that the Government Defendants irrationally concluded he was not in compliance with the Unified Government's residency policy.  To the contrary, Plaintiff's Complaint identifies that he admitted to owning property in another state which he had purchased from his mother in 2012 and used to run a non-profit lawn service.  Similarly, with respect to the extended grievance procedures and delay in arbitration proceedings, Plaintiff failed to plead facts that lead to an inference that the Government Defendants took actions that wrongly interfered with his substantive due process rights.  None of their actions were conscience-shocking.  Therefore, even when taken in the light most favorable to him, Plaintiff's facts cannot lead to an inference the Government Defendants irrationally or arbitrarily suspended and terminated his employment.

However, even if the Government Defendants incorrectly concluded that Coleman violated the residency policy and inconsistently applied its residency policy, these facts do not demonstrate the decision to suspend and ultimately terminate him was arbitrary, irrational, or

---

[32]*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)).

conscience-shocking. "[T]he Due Process Clause does not protect against 'wrong' decisions, only 'arbitrary' ones."[33] It protects against governmental abuse of power, and is "not a guarantee against incorrect or ill-advised personnel decisions."[34] At best, these facts suggest an inference that the Government Defendants incorrectly decided to suspend and ultimately terminate Plaintiff. Therefore, the Government Defendants' alleged actions do not rise to the level of substantive due process violations because the law does not guarantee protections against ill-advised or incorrect adverse employment decisions.

Finding that Plaintiff pled facts that establish a claim of substantive due process against the Government Defendants requires the Court to assume and create additional facts not identified by Plaintiff. Therefore, the Court dismisses Plaintiff's substantive due process claims against the Unified Government for failure to state a claim.

### b. Procedural Due Process

To succeed on a procedural due process claim, a plaintiff must prove two elements: first, that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and second, that he was not "afforded an appropriate level of process[.]"[35] For the sake of argument, the Government Defendants assume Coleman had a property interest in his employment under Kansas law. Therefore, they argue that Plaintiff's Complaint demonstrates he received procedural due process both before and after he was

---

[33] *Garcia v. City of Albuquerque*, 232 F.3d 760, 771 (10th Cir. 2000) (finding that a city's reliance on a doctor's assessment that an employee was unable to perform duties was not arbitrary, even if it was not medically compelled).

[34] *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)); *see City of Albuquerque*, 232 F.3d at 771 ("[T]he Due Process Clause does not protect against 'wrong' decisions, only 'arbitrary' ones.").

[35] *Copelin–Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quotation omitted).

deprived of his property interest in his employment.  The Court finds that on the face of his

Complaint, Plaintiff's allegations do not establish a procedural due process claim.

Under the Fourteenth Amendment, deprivation of a constitutionally protected interest

must "be preceded by notice and opportunity for hearing appropriate to the nature of the case."[36]

This requires some sort of pre-termination hearing.[37]  A pre-termination hearing, "though

necessary, need not be elaborate."[38]  The hearing need not be a full adversarial evidentiary

hearing; it is sufficient that the employee has an opportunity to respond and present reasons why

the non-reappointment should not happen.[39]

Plaintiff's factual allegations do not support an inference that the Government

Defendants deprived him of procedural due process prior to his suspension and termination.

Plaintiff states he learned of the claim that he did not meet the residency requirement at a July

28, 2017 meeting with Fire Chief Jones.  During this meeting, he answered questions about his

residency, did not deny owning property in another state, and explained he purchased the out-of-

state property from his mother in 2012 and used it for his lawn care business.  Fire Chief Jones

also showed him a picture of the property that he claimed to be in question.  Plaintiff denied the

property in the picture was the property in question.  After this meeting, Plaintiff was suspended,

without pay, pending termination and the outcome of the investigation.  Therefore, before his

suspension and termination, Plaintiff received notice his residency was at issue, heard and saw an

explanation of the evidence against him, and had the opportunity to convey his version of the

---

[36]*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[37]*Id.*

[38]*Montgomery v. City of Ardmore*, 365 F.3d 926, 935–36 (10th Cir. 2004) (quoting *Loudermill*, 470 U.S. at 545).

[39]*Loudermill*, 470 U.S. at 545–45.

story and defend himself. Thus, on the face of his Complaint, Plaintiff's alleged facts do not indicate a lack of pre-deprivation due process.

The requirements for post-deprivation due process are less clear than those for pre-deprivation.[40] While there is no one procedure that satisfies post-deprivation procedural due process, the Tenth Circuit recognizes that a collective bargaining agreement's grievance procedure satisfies an employee's entitlement to procedural due process following termination.[41] After his suspension, Plaintiff filed a grievance, thus availing himself of the grievance procedure in the Memorandum of Agreement between IAFF Local 64 and the Unified Government. Through IAFF Local 64, Plaintiff's grievance reached the arbitration process. IAFF Local 64, however, withdrew the grievance for lack of merit before an arbitration hearing occurred.

While Plaintiff's Complaint is riddled with facts relating to his disappointment with what occurred during the grievance procedure, Plaintiff has not pled facts which support an inference that the Government Defendants impacted IAFF Local 64's decision to withdraw his complaint or prevented Plaintiff from taking part in the grievance procedure. Instead, Plaintiff's Complaint indicates he engaged in the grievance procedure provided for by the Memorandum and Agreement up until the point IAFF Local 64 withdrew his grievance. Simply because Plaintiff disagrees with IAFF Local 64's decision to withdraw the grievance does not mean the facts of his Complaint give rise to an inference that the Government Defendants denied him post-deprivation procedural due process. Therefore, as Plaintiff's Complaint does not contain facts

---

[40]*See Copelin–Brown*, 399 F.3d at 1255 (discussing the general requirement of a post-termination hearing).

[41]*See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (finding that the "CBA's grievance procedure provided [p]laintiff an adequate post-deprivation remedy for [d]efendants' violation of the CBA provision regarding the imposition of discipline," despite the union's failure to bring a formal grievance against the defendant); *Newton v. Unified Gov't of Wyandotte Cty. and Kan. City, Kan.*, No. 17-cv-2043-JWL, 2018 WL 3122178, at *8 (D. Kan. June 26, 2018); *see also Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 628–29 (7th Cir. 1995); *Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992); *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983).

sufficient to create an inference of a lack of pre- or post-deprivation due process, the Court dismisses Plaintiff's procedural due process claims against the Government Defendants for failure to state a claim upon which relief may be granted.

## B. Fraud and Misrepresentation

Plaintiff's first Kansas law tort claim is for fraud and misrepresentation. Plaintiff's Complaint suggests that his fraud claim arises out of IAFF Local 64's decision not to advance his grievance to arbitration, and that this resulted from fraud on the part of Defendants. The Court finds that, as to all Defendants, Plaintiff fails to allege facts sufficient to state a claim for fraud. In Kansas, an action for fraud requires "an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment."[42] Under Fed. R. Civ. P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Therefore, to survive a motion to dismiss, Plaintiff's Complaint "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[43]

Plaintiff's Complaint does not meet the heightened pleading standard for fraud required by Rule 9(b) as it does not set out the particular circumstances of the alleged fraud. Moreover, Plaintiff fails to plead facts, aside from legal conclusions, that support his fraud claim. He alleges Defendants knowingly participated in a plan to engage in overt acts to fraudulently

---

[42]*Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004) (citing *Gerhardt v. Harris*, 934 P.2d 976 (Kan. 1997)).

[43]*Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d. 1154, 1176 (D. Kan. 2017) (citing *Thompson v. Jiffy Lube Int'l Inc.*, 505 F. Supp. 2d 907, 930 (D. Kan. 2003)); *see also Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

deprive him of income and assets, and used the grievance procedure as a "front" to do so.[44] With respect to the Union Defendants and Attorney Defendants, Plaintiff does not allege they made any untrue statement of fact that could serve as the basis of his fraud claim. Instead, Plaintiff makes a general statement of "overt acts." While Plaintiff's allegations demonstrate he met with the Attorney Defendants and Union Defendants during the grievance process, he does not allege facts to support an inference that acts taken by these Defendants were false or deceptive. Therefore, although Plaintiff disagrees with IAFF Local 64 withdrawing his grievance on the advice of counsel, without additional factual support, Plaintiff's fraud claims against the Union Defendants and the Attorney Defendants must fail.

Plaintiff's only allegation of an untrue statement is that the Government Defendants falsely accused him of violating the residency policy. However, he does not allege facts from which it could be reasonably inferred that the Government Defendants knew this statement to be untrue. He did not deny owning property in another state and only contested whether he violated the Unified Government's residency policy. Similarly, his conclusory assertions that the Government Defendants intended to deceive Plaintiff or that he relied on the Unified Government's accusation to his detriment are unsupported. Accordingly, this Court dismisses Plaintiff's fraud claim with respect to all Defendants for failure to state a claim.

### C. Intentional Infliction of Emotional Distress

Plaintiff's final claim is intentional infliction of emotional distress under Kansas law. He alleges that he has suffered extreme emotional distress because of Defendants' intentional conduct. The Court finds that Plaintiff fails to allege facts sufficient to state a claim of intentional infliction of emotional distress under Rule 12(b)(6) as to all Defendants. In Kansas,

---

[44]Doc. 1 ¶ 65.

intentional infliction of emotional distress requires four elements: "(1) the challenged conduct was intentional or performed with reckless disregard for plaintiff; (2) the conduct was extreme and outrageous; (3) a causal connection exists between the conduct and the plaintiff's mental distress; (4) the plaintiff's mental distress was extreme and severe."[45]  Plaintiff has failed to plead facts suggesting extreme and outrageous conduct and that he suffered extreme and severe mental distress.

To establish a sufficient basis to recover for emotional distress, conduct must be "'so outrageous' and its degree 'so extreme' that a civilized society overall would regard the conduct as 'atrocious and utterly intolerable.'"[46]  As an informal standard, extreme and outrageous conduct occurs when, after learning the facts of a case, the "average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, 'Outrageous!'"[47]  While Plaintiff believes he was treated unfairly during the investigation and disagrees with the decision to terminate his employment, he alleges no facts suggesting that Defendants' actions go beyond the bounds of decency or differ from typical, employment-related decisions.

With respect to the Government Defendants, neither suspending Coleman pending termination, nor their conduct during the investigation, constitutes extreme and outrageous conduct.  The law grants employers the freedom to "act irresponsibly or otherwise cause isolated 'indignities' and 'annoyances.'"[48]  In doing so, it requires employees "'to be hardened to a

---

[45]*S. Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F. Supp. 2d 1257, 1263 (D. Kan. 2010) (citing *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981)).

[46]*Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182, 1203 (D. Kan. 2016) (quoting *Taiwo v. Vu*, 822 P.2d 1024, 1030 (Kan. 1991)), *aff'd*, 686 F. App'x 552 (10th Cir. 2017).

[47]*Id.* (quoting *Taiwo*, 822 P.2d at 1029).

[48]*Id.* at 1204 (quoting *Taiwo*, 822 P.2d at 1029).

certain amount of criticism,' including employment-ending judgments."[49]  Furthermore, merely

discharging an employee does not rise to the level of extreme and outrageous conduct.[50]  Even

when construed in a light most favorable to Plaintiff, Plaintiff's facts merely reflect his

annoyances regarding the suspension and termination process.  Taken as true, Plaintiff's facts

suggest that: (1) The Fire Chief showed Plaintiff an incorrect picture of the property at issue

when questioning him about his residency; (2) The Unified Government's policy does not

require that employees spend fifty-percent of their time in Wyandotte County; (3) Plaintiff

received a large file about the investigation and received forty-five minutes to an hour to find any

inconsistencies or disagreements, (4) Plaintiff has not viewed the investigation file in its entirety;

(5) The residency policy applied differently to other agents of the Unified Government to

Plaintiff's disadvantage; (6) The Unified Government was difficult to work with during the

grievance process; and (7) Plaintiff was suspended and terminated for allegedly violating the

Unified Government's residency policy.

    While these allegations suggest Plaintiff faced difficulties with his employer, they do not

rise to the legal standard required for an intentional infliction of emotional distress claim.  As

previously discussed, Plaintiff has not alleged the Government Defendants lacked a reason to

believe he resided outside Wyandotte County.  However, even assuming they mistakenly

believed Plaintiff violated its residency policy, this is not beyond the bounds of decency in

society, especially in an employment context.  Therefore, Plaintiff fails to allege facts that lead to

an inference that the Government Defendants engaged in extreme and outrageous conduct, and

---

[49]*Id.* (quoting *Taiwo*, 822 P.2d at 1029).

[50]*Boe v. Allied Signal Inc.*, 131 F. Supp. 2d 1197, 1206 (D. Kan. 2001) (citing *Gudenkauf v. Stauffer Communs., Inc.*, 922 F. Supp. 461, 464 (D. Kan. 1996)).

his claim for intentional infliction of emotional distress against the Government Defendants must fail.

With respect to the Attorney Defendants, Plaintiff pleads few facts that could even tangentially suggest an inference of extreme and outrageous conduct. The only facts in Plaintiff's Complaint involving the Attorney Defendants are: (1) Plaintiff met with Brown in June 2017, six months after the IAFF Local 64 decided to proceed to arbitration with the grievance it filed on Plaintiff's behalf; (2) Brown advised Plaintiff he was going to obtain copies of the Unified Government's investigation; and (3) Brown wrote an opinion letter about the merits of the grievance. Even though Plaintiff apparently disagrees with Brown's legal opinion on the merits of his grievance, none of these acts suggest that the Attorney Defendants engaged in extreme and outrageous conduct.

Similarly, the Union Defendants' actions during the nearly two years of assisting Plaintiff with his grievance do not amount to extreme and outrageous conduct. Plaintiff alleges the Union Defendants did the following while assisting with his grievance: (1) IAFF Local 64 received Plaintiff's grievance in July 2016; (2) Wing met with Plaintiff in August 2016 to discuss his grievance; (3) Wing met with Plaintiff and the Unified Government in October 2016 before a mediator; (4) Wing met with and requested information from the Unified Government in December 2016; (5) Wing requested that the Unified Government allow Plaintiff to return to work; (6) Wing advanced the grievance to arbitration in January 2017; (7) Wing engaged IAFF Local 64's counsel to assist with the grievance and meet with Plaintiff during 2017; (8) Wing continued to request information from the Unified Government prior to arbitration and selecting an arbitrator; (9) Wing asked counsel for an opinion letter on the merits of the grievance and informed Plaintiff of this in September 2017; and (10) Wing ultimately informed Plaintiff in

February 2018, that, on advice of counsel, IAFF Local 64 withdrew his grievance against the Unified Government for lack of merit. While Plaintiff appears to disagree with the Union Defendants' decisions regarding his grievance, his allegations do not lead to an inference that their actions were intolerable within a civilized society. Therefore, these actions cannot amount to extreme and outrageous conduct as required for a claim of intentional infliction of emotional distress.

Moreover, Plaintiff's allegations do not support a finding that he suffered extreme and severe mental distress. Extreme and severe mental distress arises in situations where "the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it."[51] Plaintiff asserts in his Complaint that he has "suffered extreme emotional distress, mental anguish and bodily harm" due to Defendants' actions.[52] This blanket statement merely reflects a legal conclusion that Plaintiff has suffered distress and does not permit inferences to be drawn that his distress was so severe that no one should be expected to endure it. Thus, Plaintiff's Complaint fails to allege additional facts to state a claim of intentional infliction of emotional distress. Accordingly, this Court dismisses Plaintiff's claim of intentional infliction of emotional distress as to all Defendants.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' motions to dismiss (Doc. 17, 18, 34) are granted as to all of Plaintiff's claims. This case is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

---

[51]*Wallace v. Microsoft Corp.*, 454 F. App'x 663, 667 (10th Cir. 2012) (quoting *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981)).

[52]Doc. 1 ¶ 78.

Dated: October 29, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE